UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MARTIN HOMMEL,                                  :
                Plaintiff,    :   Case No.

v.                                              :   **NOTICE OF REMOVAL**

NOVARTIS CONSUMER HEALTH, INC.,                 :
                Defendant.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TO:   United States District Court for the Southern District of Florida:

       Pursuant to 28 U.S.C. § 1441, *et seq.*, defendant Novartis Consumer Health, Inc. ("NCH") hereby removes the state court action, *Hommel v. Novartis Consumer Health, Inc.*, Civil Action No. 10-31650, from the Circuit Court of the Seventeenth Judicial Circuit, Broward County, Florida, to the United States District Court for the Southern District of Florida, and alleges as follows:

       1.    This is an alleged consumer class action purporting to assert claims under the Florida Deceptive and Unfair Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA"), and for breach of express warranty arising out of the sale of NCH's over-the-counter pharmaceutical product Excedrin®PM. Plaintiff claims economic injury only (*i.e.*, there is no claim for personal injury or damage to personal property) on behalf of an alleged class consisting of "[a]ll persons who purchased Excedrin®PM in the State of Florida" at any time. (*See* Complaint ¶¶ 17-19, 24, 36-51). Among other relief, the action seeks "damage[s] in the amount of the purchase price" of the Excedrin®PM that plaintiff and each alleged class member purchased, restitution and

disgorgement, injunctive relief, including "a corrective advertising campaign," and "attorneys' fees and costs." (*Id*. ¶¶ 46, 51, Prayer for Relief ¶¶ B-F).

   2. This action is removable to federal court under the diversity jurisdiction provisions of the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, to wit: (1) the alleged class action – filed under a state "rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action" – consists of at least 100 proposed class members (28 U.S.C. §§ 1332(d)(1)(B), 1332(d)(5)(B)); (2) the citizenship of at least one proposed class member is different from that of any defendant (28 U.S.C. § 1332(d)(2)(A)); and (3) the matter in controversy, after aggregating the claims of the proposed class members, exceeds $5 million, exclusive of interest and costs (28 U.S.C. § 1332(d)(6)). As shown below, each of these requirements is satisfied here. Indeed, this is precisely the type of class action brought under state law that Congress, by enacting CAFA, intended to be removable to federal court at defendant's option.

   3. In his complaint (¶ 4), the plaintiff claims that this action "is not removable . . . pursuant to" *Cappuccitti v. DirecTV*, 2010 WL 2803093 (11th Cir. July 19, 2010). However, as explained below, *Cappuccitti* is the subject of a pending rehearing petition *en banc* seeking review by the Court of Appeals. The rehearing petition, supported by *both* sides in the case, has gathered strong *amicus* support because the panel's ruling is at war with CAFA's plain language and legislative history and, indeed, would subvert CAFA's purpose. At a minimum, this Court should defer a decision on plaintiff's anticipated motion to remand until there is a final resolution of the pending rehearing petition. Were this case remanded before then and the panel's decision then vacated by the full Court, NCH would forever lose its right to remove.

**I.    JURISDICTIONAL BASIS FOR REMOVAL
       UNDER THE CLASS ACTION FAIRNESS ACT**

4. CAFA grants the federal courts diversity jurisdiction over putative class actions where: (1) the alleged class consists of at least 100 putative class members; (2) the citizenship of at least one putative class member is different from that of any defendant; and (3) the matter in controversy, after aggregating the claims of the putative class members, exceeds $5 million, exclusive of interest and costs. Pub. L. No. 109-2 § 4(a), 119 Stat. 4 (2005). As shown below, each of these prerequisites is met in this case.

**A.    Number of Class Members**

5. Plaintiff alleges that '[i]n the early 1990's, [NCH] began marketing Excedrin®PM" and that "the proposed Class contains many thousands of members." (Complaint ¶¶ 6, 26). Accordingly, the requirement that there be 100 or more members in the putative class is satisfied. 28 U.S.C. § 1332(d)(5)(B).

**B.    Diversity of Citizenship**

6. CAFA eliminates the requirement of complete diversity. Rather, in actions (as here) covered by the Act, the requisite diversity of jurisdiction is satisfied as long as there is "minimal diversity" – *i.e.*, the citizenship of any proposed class member differs from that of at least one defendant. 28 U.S.C. § 1332(d)(2)(A).

7. Plaintiff, who alleges that he is a resident of Florida (Complaint ¶ 19), upon information and belief, is, and at the time the action was filed was, a citizen of Florida. He seeks to represent a class consisting of "Florida consumers" of Excedrin®PM (*id.* ¶¶ 18, 24), one or more of whom are, on information and belief, citizens of Florida. Thus, at least one of the proposed class members is, and at the time the action was filed was, a Florida citizen.

8. The Class Action Fairness Act's requirement of "minimal diversity" is satisfied here because at least one – here, the only – defendant is a citizen of a state other than Florida. Defendant NCH is, and at the time of filing was, a corporation existing under the laws of the State of Delaware, having its principal place of business in New Jersey, and, thus, for jurisdictional purposes, is a citizen of Delaware and New Jersey. (*See* Complaint ¶ 20).

9. Under 28 U.S.C. § 1332(d)(2)(A), because there is diversity of citizenship between at least one putative class member and at least one – here, the only – defendant, the requisite diversity of citizenship is satisfied.

C. **Amount in Controversy**[1]

10. Plaintiff seeks damages on his own behalf and on behalf of the class "in the amount of the purchase price" of all Excedrin®PM products purchased at any time in Florida. (Complaint ¶¶ 46, 51, Prayer for Relief ¶ B). Because, plaintiff alleges, NCH has been selling Excedrin®PM since "the early 1990's" (*id.* ¶ 6), and the amount of its sales at retail in Florida is well in excess of $ 5 million, the damages in the form of the full refund plaintiff seeks exceed the $ 5 million amount in controversy required under the Class Action Fairness Act.[2]

11. NCH sells Excedrin®PM principally to distributors or wholesalers, who distribute the products to retailers. NCH relies upon and uses in the normal course of business

---

[1] NCH does not concede that the named plaintiff or any putative class member would be entitled to any of the relief sought in the complaint. However, the plaintiff's "claim, whether well or ill founded in fact, fixes the right of the defendant to remove." *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 294 (1938).

[2] Because the complaint seeks a full product refund and is not limited in time, the retail value of all sales of Excedrin®PM in Florida since the product's initial introduction – alleged by plaintiff to be "the early 1990's" (Complaint ¶ 6) – fixes the amount in controversy. *See Miedema v. Maytag Corp.*, 450 F.3d 1322, 1332 n.9 (11th Cir. 2006) (in "determining the amount in controversy for jurisdictional purposes, . . . courts cannot look past the complaint to the merits of a defense," such as a statute of limitations defense, "that has not yet been established").

retail sales data reported by Symphony IRI Group, Inc. ("IRI").  (*See* Exhibit A, Declaration of Amos Yang).  In particular, IRI reports that the total retail sales in Florida of Excedrin®PM for the years 2005 through August 15, 2010 were approximately $5.85 million, excluding sales of Excedrin®PM by Wal-Mart, Inc. ("WalMart").  Given that WalMart is NCH's largest customers of Excedrin®PM, if retail sales by WalMart of Excedrin®PM in Florida were included, the aggregate retail sales of Excedrin®PM in Florida would far exceed $5.85 million during this period.  (*Id.*).

    12.  Accordingly, the compensatory damages sought by the "many thousands" of putative class members (Complaint ¶ 26), *in the aggregate*, exceed $5 million, exclusive of interest and costs.

    13.  Apart from monetary damages, the putative class members seek an injunction requiring "corrective advertising" (Complaint, Prayer for Relief ¶ E), which is included in the calculation of the amount in controversy.  *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.").  The cost to NCH of providing corrective advertising would be significant, as would the value of such injunction be significant to the class.[3]  Thus, for this reason as well, it is apparent that the

---

[3]  When a plaintiff seeks injunctive relief, "the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000). Because the $5 million amount in controversy requirement under CAFA is calculated in the "aggregate" (28 U.S.C. § 1332(d)(6)), the value of injunctive relief to the plaintiff is the value of the aggregate value of the relief to all class members.

matter in controversy in this action, *in the aggregate*, exceeds $5 million, exclusive of interest and costs.[4]

14.     Accordingly, for all of these reasons, the amount in controversy in this action, *in the aggregate*, exceeds $5 million, exclusive of interest and costs.

## II.   A REMAND MOTION BASED ON *CAPPUCCITTI* SHOULD BE DEFERRED UNTIL FINAL RESOLUTION OF THE PENDING PETITION FOR REHEARING *EN BANC*

15.     In *Cappuccitti v. DirecTV*, 2010 WL 2803093 (11th Cir. July 19, 2010), the panel held that in a class action alleging state law claims originally filed in federal court, CAFA requires that at least one named plaintiff allege an amount in controversy for his or her individual claim in excess of $75,000, reasoning that the removal of such a case under CAFA has the same requirement. *Id*. at *3. Significantly, subject matter jurisdiction under CAFA was not challenged in the district court or in the Eleventh Circuit and, thus, was never briefed by the parties; rather, it was raised *sua sponte* by the Court of Appeals. That may go a long way to explaining why *both* plaintiff and defendant have urged that the panel's decision be vacated and that the full Court grant rehearing and reverse, and why the decision has stirred so much controversy.[5]  Commentators have aptly described the panel's decision as a "bombshell" of "seismic"

---

[4]     Plaintiff also demands "attorneys' fees and costs" under FDUTPA, Fla. Stat. § 501.2105(1)  (Complaint ¶ 46; *id*. Prayer for Relief ¶ F), which are included in calculating the amount in controversy.  *See Missouri State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933); *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1265 (11th Cir. 2000) ("When a statute authorizes the recovery of attorney's fees, a reasonable amount of those fees is included in the amount in controversy."); *Cohen*, 204 F.3d at 1079 ("the amount in controversy includes consideration" of  attorneys' fees under FDUTPA).

[5]     Copies of the plaintiff's and defendant's petitions for rehearing *en banc* are attached hereto as Exhibits B and C, respectively.

importance that "has the class action bar reeling" and, if allowed to stand, would have a catastrophic impact on class-action litigation nationwide.[6]

16. Indeed, the panel's decision is contrary to CAFA's plain language and confuses the jurisdictional requirements for "class actions" with those for "mass actions."[7] As the leading treatise on federal practice explains, CAFA "extends federal subject matter jurisdiction to *class actions* when there is minimal diversity and the total amount in controversy exceeds $5,000,000, exclusive of interest and costs, and provides for aggregation *even if no individual class member asserts a claim that exceeds $75,000*." 14A Charles Alan Wright, *et al.*, Fed. Prac. & Proc. § 3704 (3d ed. Supp. 2010) (emphasis added). *See* 15 Moore's Fed. Prac. § 102.26[1][c][ii] at 102-66.11-12 (CAFA's "aggregation requirement is a major departure from" prior law, in which at least one class member had to meet the $75,000 requirement). In support of rehearing, both parties maintain that the decision is contrary to CAFA's plain text, in conflict

---

[6] Jessie K. Kamens, Breaking Appellate Ranks, Eleventh Circuit Requires $75,000 Amount in Controversy, 11 Class Action Litig. Rep. (BNA) 696 (Aug. 13, 2010); McGlinchey Stafford, Seismic Alert: 11th Circuit Upends Existing Land-scape of CAFA Subject Matter Jurisdiction, CAFA Law Blog, July 22, 2010, http://www.cafalawblog.com/-case-summaries-seismic-alert-11th-circuit-upends-existing-landscape-of-cafa-subject-matter-jurisdiction.html; Adam Steinman, *Commentary on Recent CAFA Decision (Cappuccitti v. DirecTV)*, Civil Procedure & Federal Courts Blog, July 26, 2010, http://lawprofessors.typepad.com/civpro/2010/07/commentary-on-recent-cafa-decision-cappuccitti-v-directv.html.

[7] CAFA provides that the federal courts "shall have original jurisdiction of any civil action in which the matter in controversy exceeds" $5 million "and is a class action in which" any class member has citizenship diverse from that of any defendant. 28 U.S.C. § 1332(d)(2). By contrast, CAFA provides that a "mass action" is removable if it meets the requirements for jurisdiction over class actions, "*except* that jurisdiction shall exist *only* over those plaintiffs whose claims in a mass action satisfy the jurisdictional requirements under subsection (a)," *i.e.*, meet the $75,000 minimum amount in controversy applicable to individual diversity actions. 28 U.S.C. § 1332(d)(11)(A), (B)(i) (emphasis added).

with other decisions of the Eleventh Circuit and other courts, and contrary to CAFA's purpose and legislative history.[8]

17. Endorsing this view are three organizations that have moved for leave to file *amicus curiae* briefs in support of rehearing. Says the Chamber of Commerce, "[t]he panel's interpretation of CAFA conflicts with four prior decisions of this Court and decisions in every other court of appeals"[9]; the Florida Association of Defense Lawyers maintains that the panel's interpretation "render[s] half of CAFA meaningless"[10]; and the Washington Legal Foundation foresees "chaos in this Circuit and beyond" unless the panel's ruling is vacated.[11]

18. Accordingly, in the likely event that plaintiff moves to remand based on *Cappuccitti* prior to final resolution of the pending rehearing petition in that case, NCH respectfully requests that this Court defer ruling on the motion until that time. Absent that action, if the

---

[8] *See, e.g.*, *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1263 n.3 (11th Cir. 2009) ("CAFA provides original federal jurisdiction over any class action in which: (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) the putative class includes at least 100 members; and (3) any member of the putative class of plaintiffs is a citizen of a state different from any defendant."); *Miedema*, 450 F.3d at 1325, 1327; *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 59 (2d Cir. 2006); *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 261 (3d Cir. 2008); *Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 298-99 (4th Cir. 2008); *Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 324-25 & n.6 (5th Cir. 2008); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 447-49 (7th Cir. 2005); *Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc.*, 589 F.3d 917, 920 (8th Cir. 2009); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 957 n.1 (9th Cir. 2009); S. Rep. No. 109-14, 10-11, 28, 42, 69-70, *reprinted in* 2005 U.S.C.C.A.N. 3, 11-12, 28, 40, 64-65.

[9] Exhibit D, Brief of the Chamber of Commerce of the United States of America and CTIA – The Wireless Ass'n as *Amicus Curiae* in Support of Petition for Rehearing and Rehearing *En Banc*, Aug. 18, 2010, p. 2.

[10] Exhibit E, Brief of *Amicus Curiae* Florida Defense Lawyers Ass'n, Inc., in Support of Dual Petitions for Panel Rehearing or Rehearing *En Banc*, Aug. 19, 2010, p. 9.

[11] Exhibit F, Brief of the Washington Legal Found. as Amicus Curiae in Support of the Parties' Petitions for Panel Rehearing or Rehearing En Banc, Aug. 28, 2010, p. 5.

case were remanded on the strength of *Cappuccitti* and the Court of Appeals then vacated the panel's decision and corrected the panel's plain error, NCH would irreparably be deprived of its right to remove because a removal petition on that basis would be deemed untimely despite the Court of Appeals' interceding correction *See, e.g.*, *Wisconsin v. Amgen, Inc.*, 516 F.3d 530, 533 (7th Cir. 2008); *Morsani v. Major League Baseball*, 79 F. Supp.2d 1331, 1333 & n.5, 1334 (M.D. Fla. 1999); *Metro. Dade County v. TCI TKR of S. Fla., Inc.*, 936 F. Supp. 958, 959 (S.D. Fla. 1996).

### III.     PROCEDURAL REQUIREMENTS FOR REMOVAL

19.     On August 3, 2010, the summons and complaint in this action were filed in the Circuit Court of the Seventeenth Judicial Circuit, Boward County, Florida. On August 6, 2010, plaintiff served NCH with a copy of the summons and complaint. Because that complaint was served no earlier than August 6, 2010, and the action is being removed within 30 days of that date, the removal is timely under 28 U.S.C. § 1446(b). Copies of all process, pleadings and orders served on NCH in the action are attached to this Notice of Removal as Exhibit G.

20.     The United States District Court for the Southern District of Florida embraces the county in which the state court action was filed, and, thus, this Court is a proper venue for this action pursuant to 28 U.S.C. §§ 89(c), 1441(a).

21.     NCH is filing written notice of this removal with the Clerk of the State Court in which the action was filed, pursuant to 28 U.S.C. § 1446(d). Copies of the Notice of Filing Notice of Removal, together with this Notice of Removal, are being served upon plaintiff's counsel pursuant to 28 U.S.C. § 1446(d).

22.     If any question arises as to the propriety of the removal of this action, NCH requests the opportunity to brief any disputed issues and to present oral argument in support of its position that this case is properly removable.

23. Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment of NCH's right to assert any defense or affirmative matter.

WHEREFORE, Defendant NCH respectfully removes this action from the Circuit Court of the Seventeenth Judicial Circuit, Broward County, Florida, bearing Civil Action No. 10-31650, to this Court, pursuant to 28 U.S.C. § 1441, *et seq*.

Dated: September 3, 2010
West Palm Beach, Florida

| *Of Counsel:* | s/Manuel Kushner_____ |
| --- | --- |
| | Manuel Kushner (Florida Bar No. 330957 |
| Thomas A. Smart | KAYE SCHOLER LLP |
| Richard A. De Sevo | Phillips Point, West Tower, Suite 900 |
| KAYE SCHOLER LLP | 777 South Flagler Drive |
| 425 Park Avenue | West Palm Beach, FL 33401-6163 |
| New York, NY  10022 | Tel.:  (561) 802-3230 |
| Tel:  (212) 836-8000 | Fax.:  (561) 802-3217 |
| Fax: (212) 836-8689 | |
| | *Attorneys for Defendant Novartis Consumer Health, Inc.* |

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 3, 2010, I electronically filed the foregoing documents with the Clerk of the Court using CM/ECF. I also certify that the foregoing documents are being served this day on counsel of record identified below, via facsimile and first class mail:

Stuart A. Davidson, Esq.
Cullin A. O'Brien, Esq.
Mark Dearman, Esq.
Robbins Geller Rudman & Dowd LLP
120 East Palmetto Park Road
Suite 500
Boca Raton, FL 33432
Fax: (561) 750-3364

The Gerson Law Firm
Steven Gerson, Esq.
8551 West Sunrise Boulevard
Suite 300
Plantation, FL 33322
Fax: (954-915-9191

/s/ Manuel Kushner
Florida Bar No. 330957
Attorney for Defendant
Kaye Scholer LLP
777 South Flagler Drive, Suite 900 West
West Palm Beach, FL 33401
(561) 802-3230
(561) 802-3217 - Fax