# EXHIBIT G

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

MARTIN HOMMEL, Individually and on
Behalf of All Others Similarly Situated,

               Plaintiff,

vs.

NOVARTIS CONSUMER HEALTH, INC.,

               Defendant.

Case No.:

CLASS REPRESENTATION **10 3 1 6 5 0**

JURY TRIAL DEMANDED



## SUMMONS

THE STATE OF FLORIDA
To Each Sheriff of the State:

YOU ARE COMMANDED to serve this summons and a copy of the complaint or petition in this lawsuit on Defendant:

**NOVARTIS CONSUMER HEALTH, INC.**

by serving its Registered Agent:

C T CORPORATION SYSTEM
1200 South Pine Island Road
Plantation, FL  33324

Each Defendant is required to serve written defenses to the complaint or petition on ROBBINS GELLER RUDMAN & DOWD LLP, plaintiff's attorney, whose address is 120 E. Palmetto Park Road, Suite 500, Boca Raton, FL  33432, within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

DATED on August 3, 2010

AUG 0 3 2010

HOWARD C. FORMAN
CLERK OF THE CIRCUIT COURT

By:_____
     ~~ANGEL HARRIS~~
     As Deputy Clerk

**A TRUE COPY**
Circuit Court Seal

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

MARTIN HOMMEL, Individually and on
Behalf of All Others Similarly Situated,

Case No.:  **10   31650**

      Plaintiff,

**CLASS REPRESENTATION**

vs.

NOVARTIS CONSUMER HEALTH, INC.,

**JURY TRIAL DEMANDED**

     Defendant.

_____/

**CLASS ACTION COMPLAINT**

Plaintiff Martin Hommel ("Plaintiff"), brings this action on behalf of himself and all others similarly situated against defendant Novartis Consumer Health, Inc. ("Novartis" or "Defendant"), and states:

## JURISDICTION AND VENUE

1.      This action is brought as a class action pursuant to Florida Rule of Civil Procedure 1.220.

2.      The damages suffered and sought to be recovered herein total, in the aggregate, in excess of the minimum jurisdictional limits of this Court.  Plaintiff's individual claims do not exceed the sum or value of $75,000.

3.      Venue is proper in Broward County, Florida because the causes of action asserted herein occurred and/or accrued, among other places, in Broward County, Florida.  Venue is also appropriate in this Court because Novartis conducts substantial business in Broward County and has targeted consumers to purchase its products and has advertised in various media in Broward County.

4.      This action is not removable pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332 (2005), pursuant to *Cappuccitti v. DirecTV, Inc.*, No. 09-14107, 2010 WL 2803093, at *5 (11th Cir. July 19, 2010).

## NATURE OF THE ACTION

5.      Novartis manufactures, markets and sells a product known as Excedrin® PM.

6.      In the early 1990's, Defendant began marketing Excedrin® PM.  Excedrin® PM is commonly advertised and marketed as a nighttime sleep aid for relief of occasional pain and discomfort associated with minor aches and pains.



## EXCEDRIN PM® Product Information

### *Drug Facts*

---

*Active ingredients (in each caplet) Purposes*
Acetaminophen 500 mg
............................................................................Pain reliever
Diphenhydramine citrate 38 mg
..........................................................................Nighttime sleep-aid

---

*Uses* for the temporary relief of occasional headaches and minor aches and pains with accompanying sleeplessness.

- 2 -

7.      On, February 16, 2010, Dr. Charles Ganley, head of the Food and Drug Administration's ("FDA") Office of Nonprescription Products wrote a letter to the Consumer Health Products Association ("CHPA"), expressly stating that "[t]here is an insufficient basis to support the combination of acetaminophen and diphenhydramine as a nighttime sleep aid for relief of occasional sleeplessness when associated with minor aches and pains."

8.      As advertised on the packaging, Excedrin® PM contains acetaminophen and diphenhydramine, and it is the combination of these ingredients that Defendant claims constitute a "sleep aid" and will give consumers a "good night's rest."

9.      Thus, Defendant's advertisements, marketing materials and claims to consumers regarding the "uses" of Excedrin® PM are completely false and deceptive.

10.     Defendant's misleading marketing campaign begins with a deceptive name – Excedrin® PM – as it implies that it will make you sleepy.  Defendant's exhaustive advertising campaign builds on this deception.   In addition, Defendant has no competent and reliable support for these claims, even though they state they do, going so far as to claim it has clinical proof. Defendant's representations are false and deceptive.

11.     Indeed, Dr. Riker, the President & Founder, of On Point Advisors, LLC, a healthcare consultant, and Editor-in-Chief, OTC Product News dedicated to the over-the-counter healthcare industry, states that "...the fact is that diphenhydramine, an antihistamine for allergies was discovered just after World War II, and was never designed to be sleep aid or analgesic."

12.     For the types of marketing claims at issue, the Federal Trade Commission ("FTC") rules require that Defendant has competent and reliable scientific evidence for their claims at the time the claims were made.   However, Defendant has never possessed, the requisite clinical substantiation.

- 3 -

13.     Defendant's nationwide advertising campaign has been extensive and comprehensive, spending millions of dollars to convey these deceptive messages to consumers throughout the United States. Defendant conveys and continues to convey deceptive claims about Excedrin® PM through a variety of media, including television, newspapers, magazines, direct mail, the Internet, point-of-sale displays, and on the product's labels and labeling.

14.     To be sure, when one searches for Excedrin® PM on the Internet, the "effective relief of pain and sleeplessness" is prominently displayed.

15.     Through this extensive and comprehensive campaign, Defendant has conveyed one message: Excedrin® PM will relieve your pain and help you sleep. Each person who has purchased Excedrin® PM has been exposed to Defendant's misleading advertising message multiple times.

16.     Defendant's advertising and marketing campaign is designed to cause consumers to buy Excedrin® PM as a result of this deceptive message, and Defendant has succeeded. As a result of this campaign, Excedrin is a top selling nighttime painkiller. According to a Chicago-based group that tracks most drugstores, supermarkets, and mass market retailers, Excedrin® PM had sales of $14.7 Million between April 2009 and April 2010.

17.     As a result of the deceptive and misleading messages conveyed through their campaign, Defendant has been able to charge a significant price premium for Excedrin® PM over other similar products.

18.     Plaintiff brings this action on behalf of himself and other similarly situated Florida consumers who purchase Excedrin® PM in the State of Florida in order to halt the dissemination of this false and deceptive advertising message, correct the false and deceptive perception Defendant has created in the minds of consumers acting reasonably, and to obtain redress for those who have purchased Excedrin® PM. Plaintiff alleges violations of Florida's Deceptive and Unfair Trade

- 4 -

Practices Act and breach of express warranty created by Defendant's advertising, including its labeling.

## PARTIES

19.     At all times relevant to this matter, Plaintiff Martin Hommel resided and continues to reside in this District.  During the class period, Plaintiff was exposed to and saw Defendant's advertising claims, purchased Excedrin® PM, and suffered injury in fact and lost money as a result of the unfair and deceptive trade practices described herein.

20.     Defendant Novartis is incorporated in the State of Delaware and is headquartered in Parsippany, New Jersey.  Novartis is registered to do business in the State of Florida, and does business in the State of Florida, including Broward County.  Novartis promotes, markets, distributes and sells Excedrin® PM throughout the United States, including to tens of thousands of consumers in the State of Florida, including Broward County.

## FACTUAL ALLEGATIONS

21.     Defendant's marketing claims for Excedrin® PM are all about sleep. Their internet sites state that Excedrin® PM is available in Rapid Release Gels, and that Excedrin® PM relieves your pain fast so you can sleep and feel refreshed after a  good night's rest.

22.     Defendant advertises on its website, http://www.excedrin.com/excedrin-pm.shtml, the benefits of sleep and why it is so vitally important:

**Benefits of Sleep**

Many people have viewed sleep as simply a period of "down time," when the brain and body slow down and rest. Sleep studies over the years, however, have demonstrated the real value of all of the stages of sleep. There are stages that provide energy while others help us learn or make memories.

**Why proper sleep is vitally important**

What exactly are you putting at risk when you don't sleep sufficiently? Your health, your mental state, your ability to focus, and your body's ability to heal can be severely compromised.

- 5 -

## Your sleep and your health

As scientists continue to research the effects of sleep, more is understood about the value of sleep as it relates to health. Lack of sleep can lead to many health problems including:

- Obesity and diabetes — people who report an average total sleep time of 5 hours a night are more likely to become obese compared to people who sleep 7-8 hours a night, and the diabetes epidemic appears to be related to inadequate sleep as well
- Cardiovascular disease — research suggests that insufficient sleep can increase the risk for heart disease, hardening of the arteries, and congestive heart failure
- Weakened immune system — sleep appears to play a role in the function of the immune system and a lack of sleep can reduce the body's ability to fight off common infections

## The healing abilities of sleep

Being in the habit of getting a good night's sleep can help keep you from getting sick. In the event that you do get sick, proper sleep can also help you get better.

Research shows that well-rested volunteers who were given the flu vaccine produced twice as many flu antibodies as those who were sleep deprived and given the same vaccine.

### More on this topic:

Causes of Sleeplessness
Prevention and Treatment

# SLEEPLESSNESS PREVENTION & TREATMENT

## Lack of sleep can affect your mood, focus, and safety

Many people report being moody, irritable, and unhappy when they don't get enough sleep. The fact is that people who continually suffer from lack of sleep, either from too little time in bed or untreated sleep disorders, are at greater risk of developing depression. If you think insufficient sleep may be affecting your mental state, talk to your doctor.

## Focus, concentration, and safety

If you skimp on sleep, you'll likely pay a price. Cutting back by just one hour can slow your response time and affect your focus. Lack of sleep can:

- Slow down thinking processes
- Interfere with focus and attention
- Make it easier to be confused
- Lead to faulty decision making and more risk taking
- Impair reaction time

When people who lack sleep are tested with a driving simulator, they perform as poorly as people who are drunk. Trying to function with a sleep deficit becomes a danger to you and those around you.

## A good night's sleep, night after night — some tips

Understanding your patterns of sleep and factors that keep you awake or help you fall asleep can contribute to better sleep habits and a better night's sleep.

As a first step, it can help to record your sleep patterns and factors that affect sleeplessness in a Sleep Diary. You can download and use this Sleep Diary for a period of up to two weeks to evaluate your sleep. To improve your night's sleep, the following tips can help make a difference:

- Set and stay with a consistent sleep schedule, even on weekends
- Get exercise, but no later than five or six hours before bedtime
- Avoid stimulants and nicotine — effects can take up to eight hours to wear off
- Avoid alcoholic drinks before bed
- Relax before going to bed — reading or listening to music can help
- Don't lie in bed awake — after 20 minutes get up and do a relaxing activity
- Keep room temperature comfortable to prevent sleep from being disrupted
- Talk to your doctor about over-the-counter or prescription medicines
- See a doctor if your sleeping problem continues

Learn About Causes of Sleeplessness

- U.S. National Institutes of Health
- WebMD.com
- MayoClinic.com
- SleepFoundation.org

23.     Put simply, despite the absence of competent and reliable clinical tests on the actual product, Defendant has repeatedly represented to consumers that Excedrin® PM will help you sleep. Defendant's claims are false.

## CLASS REPRESENTATION ALLEGATIONS

24.     Plaintiff brings this lawsuit on behalf of himself and the proposed Class members under Rule 1.220(b)(2) and (b)(3) of the Florida Rules of Civil Procedure. The proposed Class consists of:

*All persons who purchased Excedrin® PM in the State of Florida.*

- 7 -

25.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint. Specifically excluded from the proposed Class are the Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by the Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with the Defendant and/or its officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

26.     *Numerosity.* The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains many thousands of members. The precise number of Class members is unknown to Plaintiff. The true number of Class members is known by the Defendant, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

27.     *Existence and Predominance of Common Questions of Law and Fact.* Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a)     whether Defendant had adequate substantiation for their claims prior to making them;

(b)     whether the claims discussed above are true, or are misleading, or reasonably likely to deceive;

(c)     whether Defendant's alleged conduct violates public policy;

(d)     whether the alleged conduct constitutes violations of the laws asserted herein;

- 8 -

(e)     whether Defendant engaged in false or deceptive advertising;

(f)     whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss;

(g)     whether Plaintiff and Class members are entitled to an award of punitive damages; and

(h)     whether Plaintiff and Class members are entitled to declaratory and injunctive relief.

28.     *Typicality*. Plaintiff's claims are typical of the claims of the members of the Class in that the Defendant was unjustly enriched as a result of Plaintiff's and the Class' respective purchases of Excedrin® PM.

29.     *Adequacy of Representation.* Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel highly experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

30.     *Superiority*. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendant. It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the

- 9 -

class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

31.     In the *alternative*, the Class may also be certified because:

(a)     the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendant;

(b)     the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

32.     The claims asserted herein are applicable to all customers throughout the State of Florida who purchased Excedrin® PM.

33.     Adequate notice can be given to Class members directly using information maintained in Defendant's records or through notice by publication.

34.     Damages may be calculated, in part, from the sales information maintained in Defendant's records, so that the cost of administering a recovery for the Class can be minimized. However, the precise amount of damages available to Plaintiff and the other members of the Class is not a barrier to class certification.

35.     Unless a class is certified, Defendant will retain monies received as a result of their conduct that was taken from Plaintiff and proposed Class members.   Unless a class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class will continue to be misled.

## COUNT I

**For Violations of the Florida Deceptive and Unfair Trade Practices Act,
Florida Statutes §§501.201, *et seq.*,
On Behalf of Plaintiff and the Class**

36.     Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth here.

37.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq.* (the "Act").   The stated purpose of the Act is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.202(2).

38.     Plaintiff is a consumer as defined by Fla. Stat. §501.203.  Excedrin® PM is a good within the meaning of the Act.

39.     Defendant is engaged in trade or commerce within the meaning of the Act.

40.     Fla. Stat. §501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

41.     Fla. Stat. §501.204(2) states that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to [section] 5(a)(1) of the Federal Trade Commission Act." Defendant's unfair and deceptive practices are likely

- 11 -

to deceive – and have deceived – the consumer acting reasonably in the circumstances, and violate Fla. Stat. §500.04 and 21 U.S.C. §343. Further, FTC rules and regulations require that Defendant has the same level of substantiation for its advertisements at the time they are made as it claimed in the advertisement. Defendant's claim lacks reliable and competent clinical proof.

42.      Defendant has violated the Act by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

43.      Plaintiff and the Class have been aggrieved by Defendant's unfair and deceptive practices in that they paid for Excedrin® PM.

44.      The damages suffered by Plaintiff and the Class were directly and proximately caused by the deceptive, misleading and unfair practices of Defendant, as more fully described herein.

45.      Pursuant to Fla. Stat. §501.211(1), Plaintiff and the Class seek a declaratory judgment and court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

46.      Additionally, pursuant to Fla. Stat. §§501.211(2) and 501.2105, Plaintiff and the Class make claims for damages, attorneys' fees and costs.

## COUNT II

**Breach of Express Warranty**
**On Behalf of Plaintiff and the Class**

47.      Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth here.

48.      Plaintiff, and each member of the Class, formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased Excedrin® PM. The terms of that

contract include the promises and affirmations of fact made by Novartis on its product labels and through its marketing campaign, as described above. This product labeling and advertising constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendant on the other.

49.     All conditions precedent to Defendant's liability under this contract, including notice, have been performed by Plaintiff and the Class.

50.     Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing the product which could provide the benefits described above.

51.     As a result of Defendant's breach of its contract and warranties, Plaintiff and the Class have been damaged in the amount of the purchase price of the Products they purchased.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment:

A.     Certifying the Class as requested herein, and appointing Plaintiff and Class Representative and Plaintiff's counsel as Class Counsel;

B.     Awarding Plaintiff and the proposed Class members damages;

C.     Awarding restitution and disgorgement of Defendant's revenues to Plaintiff and the proposed Class members;

D.     Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them restitution and

disgorgement of all monies acquired by Defendant by means of any act or practice declared by this

Court to be wrongful;

    E.    Ordering Defendant to engage in a corrective advertising campaign;

    F.    Awarding attorneys' fees and costs; and

    G.    Providing such further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED:  August 3, 2010

ROBBINS GELLER RUDMAN & DOWD LLP
STUART A. DAVIDSON
Florida Bar No. 084824
CULLIN A. O'BRIEN
Florida Bar No. 597341
MARK DEARMAN
Florida Bar No. 982407

Stuart A. Davidson

120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
cobrien@rgrdlaw.com
mdearman@rgrdlaw.com

THE GERSON LAW FIRM
STEVEN GERSON
8551 West Sunrise Blvd., Suite 300
Plantation, FL  33322
Telephone:  954/915-8888
954/915-9191 (fax)
sgerson#agersonlawfirm.com

Attorneys for Plaintiff and the Class

- 14 -

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

MARTIN HOMMEL, Individually and on
Behalf of All Others Similarly Situated,

          Plaintiff,

vs.

NOVARTIS CONSUMER HEALTH, INC.,

          Defendant.

_____/

Case No.:  10-31650 (05)


CLASS REPRESENTATION


**NOTICE OF PROPOUNDING PLAINTIFF'S FIRST SET OF
INTERROGATORIES TO DEFENDANT NOVARTIS**

Plaintiff, Martin Hommel, individually and on behalf of all others similarly situated,

through counsel, and pursuant to Rule 1.340 of the Florida Rules of Civil Procedure, propounds

Plaintiff s First Set of Interrogatories to Defendant, NOVARTIS CONSUMER HEALTH, INC.

("NOVARTIS" or "Defendant"), attached hereto, to be answered under oath and in writing,

within the time and manner prescribed by law pursuant to the applicable Florida Rule of

the Civil Procedure.

Dated:  August 4, 2010

ROBBINS GELLER RUDMAN & DOWD LLP
STUART A. DAVIDSON
Florida Bar No. 084824
CULLIN A. O'BRIEN
Florida Bar No. 597341
MARK DEARMAN
Florida Bar No. 0982407

STUART A. DAVIDSON
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
Attorneys for Plaintiff and the Class

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on Defendant along with the Summons and Complaint.

Stuart A. Davidson

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT NOVARTIS

Pursuant to Florida Rules of Civil Procedure, Rule 1.340, plaintiff Martin Hommel hereby propounds the following written interrogatories to defendant NOVARTIS each of which is to be answered fully and separately, in writing within 45 days of service of these interrogatories.

### I.   DEFINITIONS

The following definitions apply to each of the interrogatories:

1.   "You," "your" or "Novartis" shall mean defendant NOVARTIS CONSUMER HEALTH, INC. individually or in any combination, and any of its corporations, businesses, subsidiaries, divisions, subdivisions, affiliated entities, predecessors, successors, parents, and their respective officers, directors, employees, partners, representatives, agents, attorneys, accountants or other persons occupying similar positions or performing similar functions.

2.   "Advertisement(s)" shall mean any promotion, promotional campaign, contest or any other method by which to promote Excedrin PM.

3.   "Excedrin PM" refers to any and all over the counter ("OTC") medicines manufactured, marketed, and sold by NOVARTIS, which contain both acetaminophen and diphenhydramine.

4.   "Affiliate(s)" means any natural person, public or private corporation, general or limited partnership, joint venture, association, government or governmental entity (including any governmental agency or political subdivision of any government), group, form of business or legal organization or arrangement, or other legal entity, including the representatives of any such persons or persons with which you are close in connection, allied, associated, attached to as a

1

member or branch, effectively control, or are effectively controlled and/or owned by, dependent and/or rely upon.

5.     "Class members" shall mean all persons in the State of Florida who have purchased Excedrin PM. Excluded from the Class are NOVARTIS's officers, directors and employees and those who purchased Excedrin PM for the purpose of resale.

6.     "Employee(s)" means any person who at any time during the period covered by this request (whether the person is a current or former employee) acted or purported to act on behalf of another person or persons, including, but not limited to, all past and present directors, officers, executives, agents, representatives, attorneys, accountants, independent contractors, advisors, and consultants of such other person or persons.

7.     "Person(s)" means any natural person, public or private corporation, general or limited partnership, joint venture, association, government or governmental entity (including any governmental agency or political subdivision of any government), group, form of business or legal organization or arrangement, or other legal entity, including the representatives of any such person or persons.

8.     "Revenues" means all monies received, including all compensation, premiums, recompense, reimbursement, restitution, remuneration, commissions and salary.

9.     "Studies" means all scientific studies, whether or not a manuscript was prepared, including, but not limited to, human studies, animal studies, in vitro studies, ex vivo studies, pilot studies, pre-clinical and clinical studies, practice tests, research projects, and scientific manuscripts, whether published or unpublished.

10.     "And" and "or" are to be considered both conjunctively and disjunctively. The singular form of a noun or pronoun includes the plural form and vice versa.

2

11.    "Any" is understood to include and encompass "all." The word "all" also includes "each" and vice versa.

12. "Test" or "Testing" shall mean product approval testing, clinical testing, safety testing, and any testing done in connection with pre-production and post-production analysis of the inclusion of acetaminophen and diphenhydramine, and how it effects sleep.

## II.    INSTRUCTIONS

1.    If the person who verifies the answers to the interrogatories does not have personal knowledge of the information contained in the answers, that person shall. for each answer not verified by personal knowledge, identify the person or persons from whom the information was obtained or, if the source of information is documentary, provide a full description including the location thereof.

2.    Where identification of a meeting is required, the following shall be separately stated as to each meeting:

   (a)    the dates and place at which it occurred;

   (b)    the identity of the persons involved;

   (c)    the substance of the subjects discussed; and

   (d)    the name and present address of every other person who, though not present or involved, possesses information concerning the existence or nature of said meeting.

3.    Where identification of a telephone conversation is required, the following shall be separately stated as to each conversation:

   (a)    the date, the identity and location of the originators of the call;

   (b)    the identity and location of the recipient of the call;

3

(c)    the identity and location of all other persons who participated in the call;

(d)    the substance of the subjects discussed; and

(e)    the identity of any other persons who, though not participating in the call, possess information concerning the existence or nature of said telephone conversation.

4.    Where identification of a document is required, the following shall be separately stated as to each document:

(a)    its date, its exact title, and the nature and substance of the document with sufficient particularity to enable it to be identified and located within any document production;

(b)    the name of the author, his or her business affiliation (presently and at the time the document was prepared), and his or her last known address;

(c)    the name, business affiliation (both presently and at the time the document was prepared) and the last known address of the addressee;

(d)    the name, business affiliation (both presently and at the time the document was prepared) and the last known address of every person to whom a copy of the document was to be sent, other than the addressee described above;

(e)    the names and addresses of all persons who now possess either the original or any copy thereof;

(f)    the identification and location of the files where the original and each copy is normally or presently kept; and

(g)    if such document is no longer in existence, state:

(i)    the circumstances surrounding its elimination;

(ii)    the date and reasons for such elimination; and

4

(iii)     the identity of the person(s) who ordered and/or supervised the elimination.

5.     Whenever identification of a person is required, the following shall be separately stated as to each person:

(a)     the name and last known business address or location and phone number of each such person; and

(b)     if such person is an individual, additionally state:

(c)     the business position or positions held by that individual at the time or times for which such identification is requested;

(d)     such person's last known residence address and telephone number; and

(e)     if such a person is not an individual, but rather an entity or organization, additionally identify the individual(s) employed by or representing such entity or organization who has knowledge of the matter at issue.

6.     If at any time after answering these interrogatories you determine that an answer you provided was false, you must immediately notify plaintiff s counsel and provide amended answers as soon as reasonably possible.

7.     If you refuse to respond to any of these interrogatories based on a claim of privilege or confidentiality, you must provide a statement of the claim of privilege (including work-product) and all facts relied upon in support of that claim, including the parties involved, any dates involved, the relevant subject matter of the privileged material, any documents or oral communications supporting the privileged information, including the dates, authors, recipients, title and subject matter, and present location of any documents involved. In the case of attorney

work-product privilege, you must also identify the litigation for which the work-product was prepared.

8.      Whenever a reference to a business entity appears, the reference shall mean the business entity, its affiliated entities, partnerships, divisions, subdivisions, directors, officers, employees, agents, clients, or other representatives of affiliated third parties.

9.      If you answer any interrogatory by reference to business records, identify such records by specific bates number and the name(s) of your employee(s) certifying the documents as business records for purposes of answering the interrogatory.

## III.    RELEVANT TIME PERIOD

Unless otherwise stated, these interrogatories seek information concerning the time period from four years prior to August 3, 2010 until the present and shall include all documents and information that relate to, in whole or in part, such period or to events or circumstances during such period, even though dated, prepared, generated or received prior to, or subsequent to, that period.

## IV.    INTERROGATORIES

1.      Identify the names, models, and trade names of all OTC medications which contain both acetaminophen and diphenhydramine which you have manufactured, marketed, sold, offered for sale, or distributed in the State of Florida.

2.      Identify the date, which you first manufactured, marketed, sold, or offered, for sale products with both acetaminophen and diphenhydramine, including but not limited to Excedrin PM.

6

4.      Identify the studies, which you believe constitute the reliable and competent clinical and scientific support for the benefits concerning sleep as claimed in your advertisements for Excedrin PM.

5.      Provide on a quarterly basis the net sales attributable to the sale of Excedrin PM in the State of Florida.

6.      Provide on a quarterly basis the cost of goods sold attributable to the sales of the Excedrin PM in the State of Florida.

7.      Provide on a quarterly basis the advertising and promotional expenses attributable to the sale of Excedrin PM in the State of Florida.

8.      Provide on a quarterly basis the research and development expenses attributable to the sale of the Excedrin PM in the State of Florida.

9.      Provide on a quarterly basis the operating income attributable to the sale of the Excedrin PM in the State of Florida.

10.     State the amount of money you spent on the advertising and promotion of the Excedrin PM in the State of Florida for each year or fraction thereof.

11.     Identify all person(s) involved at any time in the creation of advertising for Excedrin PM by stating each person(s) name, title, employer, business address and department or division and whether the person is currently employed by you and, if not, the person's last known address, business address and telephone number.

12.     Identify all persons or entities that performed any testing on (or analysis of) your claims which support Excedrin PM as an effective treatment for sleeplessness associated with minor pains and aches.

13. Identify all persons or entities that performed any testing on (or analysis of) the claims that Excedrin PM may provide modest, short-term benefits for adults with mild cases of insomnia.

14. Please identify all documents (including any advertisements and marketing materials) which were provided or displayed in any manner to retail purchasers of Excedrin PM in the state of Florida.

15. Identify all your past and present employee(s) with knowledge about the Excedrin PM representations, which are the subject of the Complaint.

16. Identify and describe any database, which contains ESI, concerning complaints from retail purchasers in the State of Florida of Excedrin PM.

17. State the total number of complaints regarding Excedrin PM that you and/or any NOVARTIS representative have received from retail purchasers of Excedrin PM in the State of Florida.

18. State the total amount of Excedrin PM sold in the State of Florida.

19. Identify by name and address all authorized retailers of Excedrin PM in the State of Florida.

20. State the names and addresses of the top ten retailers and/or retail chains of Excedrin PM in the State of Florida.

21. Identify all of your past and present employees who are or have been responsible for receiving, responding to, processing, or maintaining records of complaints about Excedrin PM received from individuals or entities in the State of Florida.

8

22.     State whether any information or documents responsive to these Interrogatories and Plaintiff s Requests for Production of Documents have been lost or destroyed and, if so, identify those document(s) or information.

23.     Identify each and every lawsuit and/or any formal complaint(s) to any agency or third party involving Excedrin PM.

24.     Please state in full and in detail, the means and manners by which you tracked and accounted for the complaints that you received from any consumers who took Excedrin PM.

## ATTESTATION

Name:

_____

Person answering Interrogatories

Title:_____

STATE OF _____)
                                                          ) ss
COUNTY OF_____)

The foregoing instrument was acknowledged before me this _____ day of _____, 2010, by_____, who is personally known to me or who has produced _____ as identification, and who did take an oath.

_____

NOTARY PUBLIC
State of _____

_____

Print Name

My Commission Expires:_____

(SEAL)

9

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

MARTIN HOMMEL, Individually and on     Case No.:  10-31650 (05)
Behalf of All Others Similarly Situated,

                 Plaintiff,

                                  CLASS REPRESENTATION

    vs.

NOVARTIS CONSUMER HEALTH, INC.,

               Defendant.

_____/

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT NOVARTIS CONSUMER HEALTH, INC.

     PLEASE TAKE NOTICE that pursuant to Florida Rule of Civil Procedure 1.350, plaintiff Martin Hommel hereby requests that defendant Novartis Consumer Health, Inc. produce copies or permit plaintiff to inspect and copy originals of the documents described herein that are in the possession, custody or control of defendant or its officers, agents, employees, attorneys or any and all persons acting on its behalf within 45 days of service of these requests for production. Plaintiff requests that the documents be made available for inspection at the offices of her counsel, Robbins Geller Rudman & Dowd, 120 East Palmetto Park Road, Suite 500, Boca Raton, FL 33432, unless such other date or place is mutually agreed upon by counsel for the parties.

**I.    DEFINITIONS**

    1.    "You," "your" or "Novartis" shall mean defendant Novartis Consumer Health, Inc., individually or in any combination, and any of its corporations, businesses, subsidiaries, divisions, subdivisions, affiliated entities, predecessors, successors, parents, and their respective officers, directors, employees, partners,

attorneys, accountants or other persons occupying similar positions or performing similar functions.

2.    "Advertisement" means any promotion, promotional campaign, contest, advertisement or any method by which to promote Excedrin PM.

3.    "Affiliate(s)" means any natural person, public or private corporation, general or limited partnership, joint venture, association, government or governmental entity (including any governmental agency or political subdivision of any government), group, form of business or legal organization or arrangement, or other legal entity, including the representatives of any such person or persons with which you are close in connection, allied, associates, attached to as a member or branch, effectively control, or are effectively controlled and/or owned by, dependent and/or rely upon.

4.    "Document" or "documents" encompasses all forms of tangible expression, including without limitation, all written, recorded, printed, typed, transcribed, filmed, digitized, or graphic matter and all other tangible things and media upon which any handwriting, typing, printing, drawing, representation, electrostatic or other copy, sound or video recording, magnetic or electrical impulse, visual reproduction or communication is recorded, reproduced or represented, including, but not limited to, books, records, correspondence, reports, memoranda, electronic mail (i.e., "email"), contracts, tables, tabulations, graphs, charts, diagrams, plans, schedules, appointment books, calendars, diaries, time sheets, reports, studies, analyses, drafts, telegrams, teletype or telecopy messages, files, telephone logs and messages, checks, microfilms, microfiche, pictures, photographs, printouts, electronic data compilations, tapes, diskettes, drives, removable media, notes, minutes or transcripts of proceedings. Documents shall include originals and all non-identical copies (whether different

from the original because of notes made in or attached to such copy, or otherwise), all other data compilations from which information can be obtained (translated, if necessary into usable form), and any preliminary versions, drafts, or other revisions of any of the foregoing.

5.      "Employee(s)" means any person who at any time during the period covered by this request (whether the person is a current or former employee) acted or purported to act on behalf of another person or persons, including all past and present directors, officers, executives, agents, representatives, attorneys, accountants, independent contractors, contact persons, advisors, and consultants of such other person or persons.

6.      "Person" or "persons" means natural persons, proprietorships, joint ventures, partnerships, corporations, trusts, groups, associations, organizations, governmental agencies and all other entities.

7.      "Revenues" means all monies received, including all compensation, premiums, recompense, reimbursement, restitution, remuneration, commissions and salary.

8.      "Studies" means all scientific studies, whether or not a manuscript was prepared, including, but not limited to, human studies, animal studies, in vitro studies, ex vivo studies, pilot studies, pre-clinical and clinical studies, practice tests, research projects, and scientific manuscripts, whether published or unpublished.

9.      "Excedrin PM" refers to any and all over the counter ("OTC") medicines manufactured, marketed, and sold by Novartis, which contain both acetaminophen and diphenhydramine.

10.     "And" and "or" are to be considered conjunctively and disjunctively. The singular form of a noun or pronoun includes the plural form and vice versa. "Or" is understood to include and encompass "and."

3

11.    "Any" is understood to include and encompass "all." The word "all" also includes "each" and vice versa.

## II.    INSTRUCTIONS

1.    Whenever a reference to a business entity appears, the reference shall mean the business entity, its affiliated companies, partnerships, divisions, subdivisions, directors, officers, employees, agents, clients or other representatives of affiliated third parties.

2.    Privilege/Redaction Log. If any documents are within the scope of any request for production but are not being produced or are being produced with portions redacted, pursuant to any claim of privilege or confidentiality:

(a)    State the nature of the privilege claimed (i.e., attorney-client, work-product, etc.);

(b)    State the name of the defendants claiming privilege and the name of the attorney, if any, with respect to whom the privilege is claimed;

(c)    State the facts upon which you rely as the basis for claiming any privilege as to the specific information or document; and

(d)    State the name of such document; identify the type of document (i.e., letter, memo, etc.); set forth the subject matter thereof; identify the person who prepared it and each person (if any) who signed it; identify each person to whom it was directed, circulated or shown; and identify each person now in possession of the document. If any document is produced in redacted form, the word "redacted" is to be placed in the redacted section of the document.

3.    All documents shall be produced that respond to any part or clause of any paragraph of these requests.

4

4.      The documents to be produced pursuant to these requests specifically embrace, in addition to documents within your possession, custody or control, documents within the possession, custody or control of any of your agents, accountants, representatives or attorneys. Such documents also embrace originals, and identical copies (whether different from the original because of notes made thereon or otherwise) of the documents described in these requests.

5.      Destruction Log. In the event that any document called for by these requests has been destroyed or discarded, that document is to be identified by stating:

(a)     The nature of the document;

(b)     Any addressor or addressee;

(c)     Any indicated or blind copies;

(d)     The document's date, subject matter, number of pages, and attachments or appendices;

(e)     All persons to whom the document was distributed, shown or explained;

(f)      Its date of destruction or discard, manner of destruction or discard; and

(g)     The persons authorizing or carrying out such destruction or discard.

6.      Documents shall be produced as they are kept in the usual course of business or the documents shall be organized and labeled to correspond to the categories in these requests. Documents gathered from hard-copy documents shall be provided in single page tagged image file format ("TIFF"). Multi-page optical character recognition ("OCR") text files should be provided for hard copy documents. Electronically stored information ("ESI") shall be produced in native format linked to TIFF. Hard copy documents and ESI in TIFF format should be provided with a Concordance Delimited File and an Opticon cross-reference file. All metadata-data that describes the electronic files, e.g., "date last modified" — associated with ESI shall be produced in text format linked to the associated files.

7.   Documents attached to each other in their original form should not be separated.

8.   In your response to each request, please: (a) identify by bates number or control number the document or documents being produced in response to such request; and (b) identify the person and department from whose files the documents are being produced.

## III.   RELEVANT TIME PERIOD

Unless otherwise stated, these requests for production seek information concerning the time period from four years prior to August 4, 2010 until the present and shall include all documents and information that relate to, in whole or in part, such period or to events or circumstances during such period, even though dated, prepared, generated or received prior to, or subsequent to, that period.

## IV.   DOCUMENTS TO BE PRODUCED

REQUEST FOR PRODUCTION NO. 1:

All documents referred to or relied upon in responding to Plaintiff s First Set of Interrogatories, dated August 3, 2010.

REQUEST FOR PRODUCTION NO. 2:

All documents which you contend support the claims about acetaminophen and diphenhydramine combined within Excedrin PM and made in your advertisements.

REQUEST FOR PRODUCTION NO. 3:

All studies, their underlying raw data and related documents, which relate to or concern acetaminophen and diphenhydramine combined within Excedrin PM.

REQUEST FOR PRODUCTION NO. 4:

All studies, their underlying raw data and related documents, which relate to or concern Excedrin PM, including marketing studies, sales and profitability analyses, and studies relating to the advertising claims.

REQUEST FOR PRODUCTION NO. 5:

All documents which relate to or concern the substantiation, accuracy, truth, or lack thereof, about Excedrin PM advertising and labeling.

REQUEST FOR PRODUCTION NO. 6:

All documents relating to the engagement of, payment of or funding of people and entities that conduct scientific studies concerning acetaminophen and diphenhydramine combined within Excedrin PM.

REQUEST FOR PRODUCTION NO. 7:

All documents which refer to, discuss or analyze the decision to trademark or Register the name Excedrin PM.

REQUEST FOR PRODUCTION NO. 8:

All scientific studies and related documents concerning research of acetaminophen and diphenhydramine combined within your products, which you conducted, sponsored, funded (in whole or in part) or participated in.

REQUEST FOR PRODUCTION NO. 9:

All documents, which you contend, support the claims about health benefits made in your advertisements for the products.

REQUEST FOR PRODUCTION NO. 10:

All documents, which indicate or conclude that any claim made by you about the products is not or may not be substantiated, accurate or true.

REQUEST FOR PRODUCTION NO. 11:

All documents relating to, constituting or compromising substantiation of claims made by you about the products to third parties, including requests by third parties for claims substantiation and your response.

REQUEST FOR PRODUCTION NO. 12:

All documents that evidence, memorialize, summarize or discuss any decision about how to market or advertise the products in the State of Florida.

REQUEST FOR PRODUCTION NO. 13:

All documents, which constitute, evidence, embody, refer to or discuss any focus group report, consumer survey, study, report, poll or any other marketing analysis or research conducted in connection with the promotion, advertising, packaging, labeling, distribution or sale of the product.

REQUEST FOR PRODUCTION NO. 14:

All documents, which evidence, reflect or discuss any potential or actual revisions or modifications made in the packaging or advertisement of the product, including, but not limited to the term sleeplessness.

REQUEST FOR PRODUCTION NO. 15:

All documents sent to retailers, distributors or health care professionals regarding or constituting the promotion, advertisement, or sale of the product.

REQUEST FOR PRODUCTION NO. 16:

All documents regarding inquiries, referral requests, complaints or communications regarding the product, including any requests relating to the efficacy of your claims about effective relief of pain and sleeplessness.

8

REQUEST FOR PRODUCTION NO. 17:

All documents which refer to or discuss discontinuing the product or discontinuing the claims about the effective relief of pain and sleeplessness.

REQUEST FOR PRODUCTION NO. 18:

Exemplars of all sales materials, promotional materials and advertisements, including, but not limited to, print, radio and television advertisements, packaging, product labeling and point of sale literature which in anyway refer to, depict and/or discuss Excedrin PM, including all versions and drafts.

REQUEST FOR PRODUCTION NO. 19:

Exemplars of all packaging, labeling, instructions, package inserts and informational brochures relating to Excedrin PM, including all versions, drafts and revisions.

REQUEST FOR PRODUCTION NO. 20:

All documents that evidence, discuss or reflect when and where print, radio or television advertisements relating to Excedrin PM were disseminated, including, without limitation, media plans.

REQUEST FOR PRODUCTION NO. 21:

All documents that evidence, discuss or reflect when and where print, radio or television advertisements relating to Excedrin PM were disseminated in Florida, including, without limitation, media plans.

REQUEST FOR PRODUCTION NO. 22:

All documents which evidence, memorialize, summarize or discuss any decision about how to market or advertise Excedrin PM in the United States.

9

REQUEST FOR PRODUCTION NO. 23:

All documents which constitute, evidence, embody, refer to or discuss any focus group report, consumer survey, study, report, poll or any other marketing analysis or research conducted in connection with the promotion, advertising, packaging, labeling, distribution or sale of Excedrin PM.

REQUEST FOR PRODUCTION NO. 24:

All documents which evidence, reflect or discuss any potential or actual revisions or modifications made concerning your claims about effective relief of pain and sleeplessness which you make in your advertisements for Excedrin PM.

REQUEST FOR PRODUCTION NO. 25:

All documents which evidence, reflect or relate to any marketing analysis or surveys which compare on any basis Excedrin PM to any other PM over the counter medication.

REQUEST FOR PRODUCTION NO. 26:

All documents sent to retailers, distributors or healthcare professionals regarding or constituting the promotion, advertisement or sale of Excedrin PM.

REQUEST FOR PRODUCTION NO. 27:

All organizational charts reflecting your agents or employees whose responsibilities include the marketing or advertising of Excedrin PM.

REQUEST FOR PRODUCTION NO. 28:

All documents which constitute an insurance policy or indemnification agreement that may provide coverage to you for any of the claims or causes of action asserted in this action, or that may provide reimbursement for payments made in defense of this action, and correspondence concerning coverage relating to this action.

REQUEST FOR PRODUCTION NO. 29:

All documents received by you from any health care professional, science-related organization or nutrition-related organization regarding Excedrin PM, including, but not limited to, letters, correspondence and reports.

REQUEST FOR PRODUCTION NO. 30:

All documents regarding inquiries, complaints or communications regarding Excedrin PM.

REQUEST FOR PRODUCTION NO. 31:

All documents which refer to or discuss any meeting, industry conference or gathering you attended where acetaminophen and diphenhydramine combined within Excedrin PM, were discussed.

REQUEST FOR PRODUCTION NO. 32:

All documents concerning payments made to fund, sponsor or otherwise pay for, in whole or in part, research concerning acetaminophen and diphenhydramine combined within Excedrin PM.

REQUEST FOR PRODUCTION NO. 33:

All documents which refer to or discuss the United States Food and Drug Administration, the United States Federal Trade Commission, the National Advertising Division of the Council of Better Business Bureaus, or any other regulatory, governmental, or industry group (foreign or otherwise) and the advertising, marketing, sale or distribution of Excedrin PM.

REQUEST FOR PRODUCTION NO. 34:

Copies of each of your individual webpages relating to Excedrin PM and each individual webpage linked at any time to those webpages.

REQUEST FOR PRODUCTION NO. 35:

All documents which refer to or discuss supplementing, revising or striking any portions of the Excedrin PM website.

REQUEST FOR PRODUCTION NO. 36:

All documents summarizing the net sales attributable to the sale of Excedrin PM in the United States.

REQUEST FOR PRODUCTION NO. 37:

All documents summarizing the cost of goods sold attributable to the sale of Excedrin PM in the United States.

REQUEST FOR PRODUCTION NO. 38:

All documents summarizing the advertising and promotional expenses attributable to the sale of Excedrin PM in the United States.

REQUEST FOR PRODUCTION NO. 39:

All documents summarizing the research and development expenses attributable to the sale of Excedrin PM in the United States.

REQUEST FOR PRODUCTION NO. 40:

All documents summarizing the operating income attributable to the sale of Excedrin PM in the United States.

REQUEST FOR PRODUCTION NO. 41:

All documents summarizing the net sales attributable to the sale of Excedrin PM in the State of Florida.

REQUEST FOR PRODUCTION NO. 42:

All documents summarizing the cost of goods sold attributable to the sale of Excedrin PM in the State of Florida.

REQUEST FOR PRODUCTION NO. 43:

All documents summarizing the advertising and promotional expenses attributable to the sale of Excedrin PM in the State of Florida.

REQUEST FOR PRODUCTION NO. 44:

All documents summarizing the research and development expenses attributable to the sale of Excedrin PM in the State of Florida.

REQUEST FOR PRODUCTION NO. 45:

All documents summarizing the operating income attributable to the sale of Excedrin PM in the State of Florida.

REQUEST FOR PRODUCTION NO. 46:

All documents summarizing the gross margin for Excedrin PM manufactured, sold or licensed for sale by you in the United States.

REQUEST FOR PRODUCTION NO. 47:

All documents which reflect, summarize, analyze or discuss the pricing of Excedrin PM, including wholesale or retail prices.

REQUEST FOR PRODUCTION NO. 48:

All monthly, quarterly, semi-annual, and annual financial reports reflecting revenues, profits and/or losses from the sale of Excedrin PM in the United States.

REQUEST FOR PRODUCTION NO. 49:

All documents you prepared regarding revenues, profits and/or losses from the sale of Excedrin PM in the United States.

REQUEST FOR PRODUCTION NO. 50:

All documents you prepared regarding revenues, profits and/or losses from the sale of Excedrin PM in Florida.

REQUEST FOR PRODUCTION NO. 51:

All documents and communications relating to or concerning periodic (annual, monthly, weekly, etc.) financial budgets or plans regarding revenues, profits and/or losses from the sale of Excedrin PM in the United States.

REQUEST FOR PRODUCTION NO. 52:

All general ledgers, trial balances, monthly, quarterly, semiannual and annual financial reports reflecting revenues, profits and/or losses from the sale of the product in the State of Florida.

REQUEST FOR PRODUCTION NO. 53:

All documents you sent to, or received from, any accountant or accounting firm, regarding the revenues, profits and/or losses from the sale of the products in the State of Florida.

REQUEST FOR PRODUCTION NO. 54:

All documents you prepared regarding revenues, profits and/or losses from the sale of the products in the State of Florida.

REQUEST FOR PRODUCTION NO. 55:

All audited financial statements (or portions thereof) regarding revenues, profits and/or losses from the sale of the products in the State of Florida.

REQUEST FOR PRODUCTION NO. 56:

All of your audited financial statements (or portions thereof).

REQUEST FOR PRODUCTION NO. 57:

All documents which you contend support any affirmative defense you have or will be asserting.

REQUEST FOR PRODUCTION NO. 58:

All documents relating to your policies or procedures with respect to the retention or destruction of documents.

Dated: August 4, 2010

ROBBINS GELLER RUDMAN & DOWD LLP
STUART A. DAVIDSON
Florida Bar No. 084824
CULLIN A. O'BRIEN
Florida Bar No. 597341
MARK DEARMAN
Florida Bar No. 0982407

STUART A. DAVIDSON
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
Attorneys for Plaintiff and the Class

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on Defendant along with the Summons and Complaint.

Stuart A. Davidson